**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

Deonta L. Brinston,                          )
                                             )
                      Plaintiff,             )
                                             )        Civil Action No. 8:20-cv-3660-TMC
           v.                                )
                                             )              **ORDER**
                                             )
The City of Easley, South Carolina;          )
Lane C. Byers; Jeremy Miller; and            )
John Doe Actors,                             )
                                             )
                                             )
                      Defendants.            )
_____  _____ )

### I. Background

Plaintiff Deonta L. Brinston ("Plaintiff"), formerly employed by the Easley Police Department ("EPD") as an officer and K-9 handler, filed this action against Defendants The City of Easley, South Carolina ("the City"); Lane C. Byers ("Byers"); Jeremy Miller ("Miller");and John Doe Actors, asserting claims for race discrimination and retaliation in violation of 42 U.S.C. §§ 1981 and 1983; violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 to 41-10-110; and interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a magistrate judge for

pretrial handling.  Defendants subsequently filed a motion for summary judgment (ECF No. 44);

Plaintiff filed a response in opposition (ECF No. 47), and Defendants filed a reply (ECF No. 50).[1]

Now before the court is the magistrate judge's detailed 32-page Report recommending that

the court grant Defendants' motion for summary judgment. (ECF No. 52).  Plaintiff filed 25 pages

of objections to the Report, (ECF No. 59), and Defendants replied to those objections (ECF No.

60).  Plaintiff then submitted a 12-page sur-reply to Defendants' reply. (ECF No. 62). This was

followed by a flurry of filings related to Plaintiff's sur-reply: Defendants' motion to strike

Plaintiff's sur-reply (ECF No. 63), Plaintiff's response in opposition to Defendants' motion to

strike (ECF No. 65), and Defendants' reply to Plaintiff's response to the motion to strike (ECF No.

66).

Neither the Federal Rules of Civil Procedure nor the Local Civil Rules provide for the

ability to file a sur-reply as a matter of right.  *See* Fed. R. Civ. P. 72(b)(2); Local Civil Rule 7.06-

7.07 (D.S.C.).  In fact, Local Rule 7.07 advises litigants that even *replies* are "discouraged."  Were

this court to permit parties to file sur-replies as a matter of course, it "would put the court in the

position of refereeing an endless volley of briefs."  *Byrom v. Delta Fam. Care--Disability &*

*Survivorship Plan*, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004) (internal quotation marks

omitted).  On November 5, 2020, to underscore this court's view of sur-replies, the undersigned

issued a standing order directing that a party "may not file, nor will the court consider, any sur-

reply to a motion absent a showing of good cause and leave of the court."  *In re: Sur-Replies*,

Standing Order (D.S.C. Nov. 5, 2020).  Plaintiff has not sought leave of court to file a sur-reply,

---

[1] Plaintiff filed additional documents in opposition to Defendants' motion. (ECF Nos. 48, 49).
Even though these filings were untimely, the magistrate judge considered Plaintiff's additional
documents in issuing her Report and Recommendation ("Report"). (ECF No. 52 at 1 n.1).  As
Defendants have not objected to the Report, the court will consider these documents as well.

and the court finds no good cause to grant such leave. The court finds Defendants' arguments in the motion to strike (ECF No. 63) well-taken and **GRANTS** the motion; the court notes, however, that it would not have considered the sur-reply as a matter of course in reviewing the Report and ruling on Defendants' motion for summary judgment.

## II. Report of the Magistrate Judge

Upon review of the parties' briefing and the record, the court adopts and incorporates the magistrate judge's thorough recitation of the procedural history and factual background as set forth in the Report, (ECF No. 52 at 1–7), to which neither party specifically objects, *see* (ECF Nos. 59 at 11; 60).[2]

### A. Race Discrimination in violation of §§ 1981 and 1983 as to all Defendants

Plaintiff's first cause of action asserts a racial discrimination claim against all of the Defendants, alleging he was subject to disparate treatment in his pay, benefits and conditions of employment by the City. (ECF No. 1 at 16–18).

**1. Disparate Pay.** Addressing Plaintiff's claim that he received disparate pay on account of racial discrimination, the magistrate judge applied the correct legal framework, recognizing that to prove a prima facie case of pay disparity, "a plaintiff must establish '(1) []he is a member of a protected class, (2) []he was performing h[is] job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive,'" and that "'[w]here . . . the prima facie case of wage discrimination is based on comparators, the plaintiff must show that []he is paid less than [employees outside the protected class] in similar jobs.'" (ECF No. 52 at 11 (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019)). The

---

[2] In Plaintiff's recitation of facts in his objections, he essentially cut and pasted the facts verbatim from his memorandum in opposition to summary judgment presented to the magistrate judge. *Compare* (ECF No. 59 at 2–10) *with* (ECF No. 47 at 2–8).

magistrate judge determined that Plaintiff failed to establish a question of fact as to whether "he was paid less than non-African-American employees [or] that the circumstances surrounding his pay otherwise suggest an unlawfully discriminatory motive." *Id.* As for Plaintiff's comparator, the magistrate judge explained as follows:

> To the extent he asserts that John Aguilar, a non-African-American who avers that he was offered "a starting salary of $40,000.00 a year to come to EPD" [Doc. 49 at 2], is a valid comparator, the record does not include any information about Aguilar's training or experience beyond that he previously worked for the Pickens County Sheriff's Office, nor does the record establish when Aguilar was offered a position with EPD or what the pay scale was at that time.

*Id.* at 12. As for Plaintiff's contention that Defendants paid him less than their own pay tiers required, the magistrate judge concluded Plaintiff failed to proffer any evidence reflecting that Plaintiff was paid less than he was due based on the pay scale used by the Easley Police Department. *Id.* at 11–12. ("The only references related to discriminatory pay in Plaintiff's response memorandum are that Defendants 'failed to pay him in accordance with their own pay tiers,' 'he would have become an equivalent of a 'corporal' in 2017,' and 'he should've been at least a 'Step 2.' [Doc. 47 at 6.] However, Plaintiff fails to direct the Court to any evidence to support these assertions. The only evidence Plaintiff cites to support them is EPD's 2017/2018 pay scale [Doc. 1-5], but nothing in the pay scale outlines the qualifications for each grade and step."). Finally, the magistrate judge found that even if there was evidence that could support a conclusion that Plaintiff was paid less than he was owed, he failed to establish that any such pay decisions were because of his race. *Id.* at 12–13.

**2. Other Disparate Treatment**

"To establish a prima facie case of racially disparate treatment pursuant to § 1981, the plaintiff employee must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his job performance was satisfactory at the time of the adverse

employment action; and (4) he was treated differently from similarly situated employees outside his protected class." *Irani v. Palmetto Health*, 767 F. App'x 399, 418 (4th Cir. 2019). "An adverse employment action is a discriminatory act that adversely affects the 'terms, conditions, or benefits' of employment." *James v. Booz–Allen & Hamilton, Inc*., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). The magistrate judge noted that "Plaintiff appears to base his disparate treatment claim on his assertions that Defendants did not create a canine sergeant position and promote him to that position and that Defendants did not pour a concrete slab at his home for [his police K9]." (ECF No. 52 at 13–14). The magistrate judge then concluded that, although failure to promote can constitute an adverse action, Plaintiff pointed to no evidence reflecting that Defendants ever created a canine sergeant position or that any other position existed to which he was eligible for promotion. *Id*. at 14. As for the suggestion that Defendants did not pour a concrete slab at his home for his K9 as they did for a Caucasian K9 handler, the magistrate judge concluded that there was no evidence suggesting this affected the terms, conditions, or benefits of his employment. *Id*.

### B. Sections 1981 and 1983  Retaliation as to all Defendants

Plaintiff's second cause of action purports to assert a retaliation claim under §§ 1981 and 1983 against all of the Defendants, alleging that Defendants made adverse decisions that were retaliatory in nature. *Id.* at 18–20. As pointed out in the Report, Plaintiff's retaliation claim is not a model of clarity as pled in the complaint, which includes references to discriminatory policies and due process deprivations but fails to make clear how or why such alleged policies and deprivations were *retaliatory*. (ECF No. 52 at 17 & n.14); *see* (ECF No. 1 at 18–19). Ultimately, the magistrate judge analyzed the retaliation claim as alleging that Plaintiff was terminated in

retaliation for his lawyer's complaints about race discrimination, noting that the parties eventually began addressing the retaliation claim as based on Plaintiff's termination. *Id*. at 17.

To establish a prima facie case for retaliation, a plaintiff must show "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). With respect to Plaintiff's contention that he was terminated in retaliation for his lawyer's complaints to Defendants about racially discriminatory treatment, the magistrate judge determined that Defendants articulated a legitimate, nonretaliatory reason for terminating Plaintiff – that he violated the EPD's anti-recording policy when, during a phone conversation with Defendant Miller, Plaintiff placed the call on speakerphone and allowed his fiancé to record it without Miller's knowledge or permission and without authorization from the police chief, city manager or law enforcement. *Id*. at 19. The magistrate judge then found that Plaintiff failed to create a genuine issue of fact as to pretext:

> Plaintiff asserts that his termination was a pretext for unlawful discrimination because . . . [Defendants never asked] if he was the one who recorded the Telephone Conversation; Plaintiff did not record the Telephone Conversation, but instead his girlfriend did; and Caucasian officers were not disciplined for more egregious policy violations. With respect to Plaintiff's assertion that no one asked him if he [personally] recorded the conversation, he is not entitled to an even, fair, or just investigation. Pretext analysis does not convert [§§ 1981 and 1983] into a vehicle for challenging unfair—but nondiscriminatory—employment decisions. The record indicates that Plaintiff placed his phone on speaker during the Telephone Conversation while near his girlfriend, which allowed her to record the conversation. Then, after the recording was shared with his counsel, Plaintiff knew his counsel had the recording and was going to use it. Plaintiff's counsel then sent the recording to [the city attorney], thus informing Defendants that the Telephone Conversation had been recorded without authorization. . . . [T]he Court cannot see how the fact that Plaintiff's girlfriend, as opposed to Plaintiff, pressed record would make any difference to [Defendant] Byers, as the decision maker.
>
> Finally, although Plaintiff provides a list of non-African-American employees who he contends committed even more egregious policy violations but were not disciplined, most of his allegations are not supported by record evidence. Moreover, Plaintiff has not directed the Court to any evidence to support a finding

that the purported comparators are similarly situated to Plaintiff.  Indeed, Plaintiff
does not assert that any of the purported comparators violated the Anti-Recording
Policy.

*Id*. at 20–22 (internal citations omitted).

### C. FLSA and SCPWA Claims

First, the magistrate judge determined that because Plaintiff had not proffered evidence of

a willful violation of the FLSA, the two-year statute of limitations applies and, therefore, "bars

recovery for any pay Plaintiff claims not to have been paid in violation of the FLSA before October

19, 2018, two years before this action was filed." *Id*. at 23.  Accordingly, the magistrate judge

focused only on allegations relating to May 24, 2020, when Plaintiff claims "a supervisor under-

reported the time he worked and, therefore, he was not paid for working overtime of between six

and eight hours." *Id*.  The magistrate judge concluded that Defendants should be granted summary

judge, reasoning as follows:

> The FLSA requires all employers, including states and their political subdivisions,
> to provide overtime compensation at a rate of one-and-one-half times the regular
> rate at which an employee is employed for each hour worked in excess of 40 hours
> per week. 29 U.S.C. § 207(a)(1). Public employers, though, are allowed to provide
> overtime compensation in the form of compensatory time at a rate of one-and-a-
> half hours for every excess hour worked. Id. at § 207(o)(1). Here, Miller attests that
> Plaintiff was given 12 hours of comp time for working approximately eight hours
> of overtime on May 24, 2020. [Doc. 44-3 ¶ 5.] Defendants have provided a comp
> time tracking log that shows Plaintiff was credited for 12 hours of comp time on
> May 24 for "Late stay." . . .  Plaintiff has put forth no contrary evidence to create a
> genuine issue of material fact regarding whether he received comp time for the
> overtime hours worked on May 24, 2020.

*Id*. at 23–24.

With respect to the SCPWA cause of action, the magistrate judge determined Plaintiff's

SCPWA claim "merely re-alleges the portion of his FLSA claim asserting that he worked

compensable time 'off the clock,'" and, therefore, "is preempted by the FLSA."  *Id*. at 24–25

(citing *Anderson v. Sara Lee Corp*., 508 F.3d 181, 194 (4th Cir. 2007); *McMurray v. LRJ Rests.,*

*Inc.*, No. 4:10-cv-1435-JMC, 2011 WL 247906, at *2 (D.S.C. Jan. 26, 2011) (holding that claim for overtime pay under the SCPWA preempted by FLSA)).

### D. FMLA Claims

**1. Interference Claims**.  The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1).  Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave due to a "serious health condition" suffered by the employee or a member of the employee's family.  *See* 29 U.S.C. § 2612(a)(1)(C), (D).  "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).  The magistrate judge considered three FMLA interference claims: (1) Defendants failed to notify him of his eligibility for FMLA leave; (2) Defendants failed to reinstate Plaintiff to his previous position upon his return from leave; and (3) Defendants interfered with Plaintiff's FMLA rights when they terminated him.

Failure to notify.  The FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA.  *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016) (citing 29 C.F.R. § 825.300).  Pursuant to the regulations promulgated pursuant to the FMLA, an employer is required to notify the employee of eligibility to take FMLA leave within 5 business days from "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason[.]" 29 C.F.R. § 825.300(b)(1).  The magistrate judge found that, although Defendants "seem[ed] to concede that they failed to provide Plaintiff with notice of his eligibility

to take FMLA leave within five business days," Plaintiff failed to present evidence that he suffered prejudice as a result of Defendants' failure to provide notice. *Id*. at 26–27 (citing *Vannoy*, 827 F.3d at 302 (explaining a court's analysis of an FMLA claim "does not end with the determination that a violation of the FMLA notice provisions occurred" and a plaintiff still must establish that he was prejudiced by Defendant's failure to provide notice)).

Failure to reinstate.    At the end of an employee's FMLA leave, the employee shall be entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). That is, a returning employee is "entitled to be restored to his previous position or an equivalent position, so long as he would have retained that position or an equivalent one *absent the taking of leave*." *Adams*, 789 F.3d at 426–27 (emphasis added) ("[T]here is no absolute right to restoration to a prior employment position."). As recognized by the magistrate judge, under the FMLA, the "right to reinstatement is not absolute because a restored employee is not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" (ECF No. 52 at 27–28 (citing 29 U.S.C. § 2614(a)(3)(B)). The magistrate judge found Plaintiff failed to present evidence refuting Defendant's evidence that his assignment to regular patrol was anything more than temporary until Plaintiff could get recertified or that the temporary assignment affected his compensation or benefits. *Id*. at 28–29.

Interference by termination.    Finally, to the extent Plaintiff is asserting a claim that Defendants interfered with his FMLA rights by terminating him, the magistrate judge rejected it on the same basis as she did Plaintiff's §§ 1981 and 1983 retaliation claim (and Plaintiff's FMLA

retaliation claim)— because "violating the Anti-Recording Policy by recording the Telephone Conversation was a legitimate reason for Plaintiff's termination. *Id*. at 29–30.

**2. FMLA Retaliation**. "Retaliation claims brought under the FMLA are analogous to those brought under Title VII" and require Plaintiff to "prove three elements to establish a prima facie case of retaliation: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events." *Adams*, 789 F.3d at 429 (internal quotation marks omitted). If Plaintiff can make this prima facie showing, "the burden shifts to the defendant to offer a non-discriminatory explanation for the adverse action, and then plaintiff bears the burden of establishing that the proffered explanation is a pretext for FMLA retaliation." *Drys v. PrimeCare Med., Inc*., No. PWG 21-350, 2022 WL 4080314, at *4 (D. Md. Sept. 6, 2022).

The magistrate judge considered two retaliation claims that overlapped substantially with part of Plaintiff's FMLA interference claims: (1) Defendants did not reinstate Plaintiff to his previous position in retaliation for his exercise of FMLA rights and (2) Defendants terminated Defendant in retaliation for his exercise of FLMA rights. In determining that Plaintiff's FMLA retaliation claims cannot clear the summary judgment hurdle, the magistrate judge explained as follows:

> [E]ven assuming Plaintiff can establish a prima facie case of FMLA retaliation with respect to his termination, see Boone v. Bd. of Governors of Univ. of N.C., 858 F. App'x 622, 624 (4th Cir. 2021), as stated with respect to Plaintiff's §§ 1981 and 1983 retaliation claim, Defendants have articulated a legitimate, nonretaliatory reason for terminating Plaintiff: Byers decided to terminate Plaintiff for violating the Anti-Recording Policy. [Doc. 44-8.] And for the same reasons discussed with respect to Plaintiff's §§ 1981 and 1983 retaliation claim, supra, Plaintiff has not established a genuine dispute of material fact on the question of pretext sufficient to make Defendants' proffered reason a triable issue. Moreover, with respect to Plaintiff's FMLA retaliation claim related to the purported failure to reinstate him to his previous position, as discussed with regard to his FMLA interference claim, supra, Byers decided to reassign Plaintiff temporarily to regular

10

patrol duty until he completed recertification training because his K9 certification was nearing expiration. [Doc. 44-3 ¶ 8.] Although Plaintiff conclusorily argues that Miller pretextually refused to restore Plaintiff to his previous position "for patently false reasons that have been resoundingly disproven" [Doc. 47 at 25], he fails to direct the Court to any evidence to support this assertion. Nor does anything in the record support a finding that his temporary reassignment to regular patrol duty was a pretext for FMLA retaliation. The record establishes that his K9 certification was set to expire in June 2020, but because of COVID-19 related closures at the training vendors, the SCCJA extended the recertification by 90 days from the date the vendor reopened. [Doc. 44-4.] Highland reopened on June 25, 2020 [Doc. 44-5]; therefore, Plaintiff's recertification deadline was September 23, 2020. Miller had scheduled Plaintiff's recertification training for the week after he returned [Doc. 47-2 at 25], and as stated, Plaintiff has not established that he would have been able to continue working as a K9 handler once his certification expired. On this record, Plaintiff has not created a genuine dispute of material fact such that a reasonable factfinder could conclude Plaintiff was temporarily reassigned to patrol duty as retaliation for taking FMLA leave.

*Id*. at 31–32.

The magistrate judge, therefore, recommends that the court grant Defendants' motion for summary judgment (ECF No. 44) in full.

### III. Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id*. at 662 n.6 (quoting *United States v. One Parcel of Real Prop.,*

*With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla*., 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g., Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Similarly, objections which "merely express disagreement with the magistrate judge's Report . . . in lieu of any actual argument or specific assertion of error in the magistrate judge's findings" do not constitute specific objections requiring de novo review by this court. *Lowdermilk v. LaManna*, No. 8:07-2944-GRA, 2009 WL 2601470, at *2 (D.S.C. Aug. 21, 2009); *see also Orpiano v. Johnson*, 687 F.2d 44, 47–48 (4th Cir. 1982) (noting that de novo review is not required where a party makes only general and conclusory objections that do not direct the court to a specific error in the Report). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp*., 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## IV. Discussion

Plaintiff interposes seven specific objections to the Report. (ECF No. 59 at 11). The court addresses them seriatim.

**(1) The magistrate judge's determination that Plaintiff was terminated for a legitimate, non-discriminatory reason was erroneous.**

Plaintiff objects to this determination for several reasons. First, Plaintiff states that the written policies of the *Easley Police Department* allowed Plaintiff's fiancé to make such a recording. *Id*. at 12. This policy appears to recognize the general right of members of the public "to lawfully record members of [the Easley Police Department] who are performing their official duties" and states that "[m]embers of this department will not prohibit or intentionally interfere with such lawful recordings." (ECF No. 48-10 at 1). A lawful recording of law enforcement activity by a member of the public, according to the Easley Police Department's policy, "may be made from any public place or any private property where the individual has the legal right to be present." *Id*. Accordingly, Plaintiff argues that because Plaintiff's fiancé recorded the conversation on her own phone while sitting in her house, her recording complied with the Easley Police Department's policy pertaining to members of the public recording law enforcement activities and, therefore, cannot constitute a legitimate, non-discriminatory reason for terminating Plaintiff. (ECF No. 59 at 12). The court rejects and overrules this objection. Plaintiff was not fired for violating this policy; it does not even apply to this situation. Plaintiff was terminated for violating a provision in the *City of Easley's employee policy manual* (ECF No. 44-8 at 2) which prohibits city employees "from tape recording or video-taping *other employees* or City officials unless the employee/official has given his express permission or unless authorized by the City Administrator, the Police Chief, or an outside law enforcement agency." (ECF No. 44-9 at 29). Plaintiff's objection is nonsensical and gives the court no basis whatsoever for deviating from the magistrate judge's recommendations.

Next, Plaintiff suggests that the anti-recording provision in the City's employee policy manual is *unconstitutional*. (ECF No. 59 at 13). The court rejects this argument summarily. The

authorities cited by Plaintiff generally discuss a citizen's First Amendment right to record the public activities of public officials; they do not address the viability of employee handbooks that prohibit recording co-workers or supervisors without consent. *See id*. Neither the Easley Police Department nor any of the Defendants have taken any action with respect to Plaintiff's fiancé whose constitutional rights are irrelevant in this matter. Furthermore, as Defendants note, (ECF No. 60 at 8), courts have repeatedly recognized that termination based on the violation of policies prohibiting the unauthorized recording of coworkers serves as a legitimate, non-discriminatory reason for termination. *Hill v. Town of Mocksville*, 2021 WL 6123985, at *10 (M.D.N.C. Dec. 21, 2021) (dismissing of police officer on this basis was legitimate, non-discriminatory reason); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (same); *Gray v. Deloitte LLP*, 2019 WL 12520125, at *10 (N.D. Ga. Jan. 20, 2019), *report and recommendation adopted*, 2019 WL 12520100 (N.D. Ga. Feb. 13, 2019), *aff'd*, 849 Fed. App'x 843 (11th Cir. 2021) (same); *Smith v. Arkansas Parole Bd.*, 2015 WL 7259774, at *5 (E.D. Ark. Nov. 17, 2015) (same); Denning v. Topre Am. Corp., 2022 WL 2181060, at *10 (N.D. Ala. June 16, 2022) same).

Plaintiff has failed to point to any evidence reflecting that Defendant's "explanation is unworthy of credence." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 727 (4th Cir. 2019) (internal quotation marks omitted) (explaining plaintiff may demonstrate pretext by showing "the defendant's explanation is unworthy of credence"). This objection is overruled.

### (2) The magistrate judge erroneously determined there was no FMLA interference.

First, Plaintiff states that the magistrate judge correctly concluded and devotes a substantial portion of this objection to the argument that the City failed to discharge its notice obligations under the FMLA but argues that the magistrate judge "erroneously found that [Plaintiff] was not prejudiced because he was fully paid during leave." (ECF No. 59 at 15). This is simply incorrect. The magistrate judge stated that "Plaintiff has failed to address the prejudice prong of the inquiry,

and nothing in the record supports a finding that Plaintiff was prejudiced *by not receiving proper notice*." (ECF No. 52 at 27) (emphasis added). The Report does note that Plaintiff was paid during his leave in Mississippi, but the magistrate judge's conclusion is not based solely on that factor. *Id*. Indeed, the Report also notes that the length of Plaintiff's leave was not affected *by the failure to notify* as Plaintiff returned from leave on the day he was due to return. *Id*. Plaintiff has failed in his objections to point to any evidence the magistrate judge overlooked in making this determination or even to articulate any discernable basis upon which a trier of fact could find that he suffered prejudice from the City's failure to notify under the FMLA.

Second, as to Plaintiff's FMLA interference claim based on the alleged failure to reinstate him to his same position or an equivalent position, he argues that he was prejudiced when he was transferred to patrol upon his return from leave as "[t]here is overwhelming evidence of the non-equivalence" between road patrol officer and K-9 officer—"the hours are different . . . the uniform is different . . . [and] the duties are different."  (ECF No. 59 at 15).  Plaintiff, however, fails to elaborate further on such differences and, more fatally to his claim, fails to cite any record evidence to support these statements. Plaintiff cannot defeat a summary judgment motion merely by making unsupported statements in his opposition memoranda or his objections. *See* Fed. R. Civ. P. 56(c)(1)(A) (In response to a motion for summary judgment, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations . . . ."); *see also Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that there is an affirmative duty for "the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)).  If there is evidence in voluminous record to support these statements, it is not the court's job to scour the documents to find it. *Carlson v. Boston Sci. Corp*., 856 F.3d 320, 325

(4th Cir. 2017) ("The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court.").

As pointed out by the City, (ECF No. 60 at 10), prejudice in an FMLA interference claim "can be proven by showing that the employee *lost compensation or benefits* 'by reason of the violation,' . . . sustains *other monetary losses* 'as a direct result of the violation,' . . . or suffers some *loss in employment status* remediable through 'appropriate' equitable relief, such as employment, reinstatement, or promotion." *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 198 (4th Cir. 2013), as amended (May 3, 2013) (quoting 29 U.S.C. § 2617(a)(1)(A) and (B)). The Report recognized this, (ECF No. 52 at 28–29), and noted Plaintiff failed to highlight any evidence of prejudice by the forgoing standards—no loss of compensation, benefits, other monetary losses or loss in employment status caused by his temporary assignment to patrol until he could re-certify. *Id*. at 28–30. The court discerns no reason to deviate from the magistrate judge's analysis or recommendation regarding Plaintiff's FMLA interference claims. This objection is overruled as well.

### (3) The magistrate judge erroneously determined Defendants Byers and Miller are entitled to qualified immunity on the § 1983 claims.

"To overcome a defendant's claim of qualified immunity, the court must determine: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted)). These two inquiries do not have to be addressed in sequence; instead, courts are entitled to "exercise their sound discretion" regarding which issue to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The individual official is entitled to qualified immunity if either prong is not satisfied. *See id*. at 244-45.

The magistrate judge agreed with Defendants Byers and Miller that they are shielded by qualified immunity on the § 1983 claims based on her conclusion that these Defendants are entitled to summary judgment on the merits of Plaintiff's § 1983 claims. (ECF No. 52 at 22 n.17). In objecting to this conclusion, Plaintiff first refers to his objections to the magistrate judge's recommendation that Defendant be granted summary judgement on the merits of his § 1983 claims. (ECF No. 59 at 16–17). Plaintiff then simply pointed to the date of enactment for § 1981, the FMLA, and the FLSA to prove that Defendants Byers and Miller violated clearly established federal law. *Id*. at 17–18 ("Needless to say, after 29 years, the FMLA is pretty entrenched in American culture. Thus, it is a clearly established federal right . . . .). As explained in this order, the court agrees with the magistrate judge's recommendation that Defendants are entitled to summary judgment on the merits and, therefore, agrees with the conclusion that Defendants Byers and Miller are entitled qualified immunity. Additionally, Plaintiff's argument regarding the "clearly established" prong ignores the directive that courts frame the right at issue "with specificity," and not "at a high level of generality," *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019), and is completely without merit. The court overrules this objection.

### (4) The magistrate judge erroneously disregarded Jason Finley as a comparator relevant to Plaintiff's retaliation claims and, specifically, that his termination for violating the recording policy was pretextual.

In his memorandum in opposition to summary judgment, Plaintiff seemed to contend that the reason given by Defendants for terminating him—the violation of the anti-recording policy in the City Employee Policy Manual—was mere pretext for racial animus as reflected by the alleged fact that "numerous Caucasian officers committed or were involved in egregious policy violations . . . but none were disciplined, let alone fired." (ECF No. 47 at 15). For purposes of his objection, however, Plaintiff focuses on Jason Finley, another K-9 handler, as a comparator to show pretext. (ECF No. 59 at 19–20). The magistrate judge found that there was no evidence to support the

conclusion that the comparators identified by Plaintiff, including Jason Finley, are not similarly situated to Plaintiff in that none of them had violated the Anti-Recording policy.  (ECF No. 52 at 21–22).

In objecting to this portion of the Report, Plaintiff simply recasts his argument previously presented to and rejected by the magistrate judge.  The court perceives no reason to depart from the magistrate judge's conclusions and recommendations addressed in this objection.  The court overrules this objection.

### (5) The magistrate judge erroneously concluded that Plaintiff's SCPWA claims are pre-empted by the FLSA and that Plaintiff was compensated for alleged overtime worked in May 2020.

Plaintiff argues in his objections that he is seeking to recover under the SCWPA for unpaid time he was forced to work "off the clock"—for example, traveling for working dog conferences, preparing K-9 materials for Defendant Byers at his request, scouting training facilities, scheduling training and providing equipment for both K-9 officers—which is not a claim preempted by the FLSA.  (ECF No. 59 at 23).  Plaintiff relies on *Regan v. City of Hanahan*, No. 2:16-cv-1077, 2017 WL 1244041, at *2 (D.S.C. Apr. 3, 2017), wherein the court recognized Plaintiffs "may not rely on the SCPWA to seek minimum wages or overtime pay because such claims are preempted by the FLSA" but concluded that their claims for "unpaid, prevailing wages, over and above the minimum wage"—including wages for work performed "off the clock"—were not preempted.  *Id* Indeed, "[t]he South Carolina Wage Payment statute is broader than the FLSA in that it is not limited to controversies involving minimum wage and overtime but applies to all wages due." *Pecora v. Big M Casino, Inc*., No. 4:18-cv-01422-RBH, 2019 WL 295839, at *3 (D.S.C. Jan. 23, 2019) (quoting *Spallone v. Soho Univ., Inc*., 4:15-cv-1622-RBH, 2015 WL 5098154 (D.S.C. Aug. 31, 2015)).

Nonetheless, the magistrate judge determined that Plaintiff, in his deposition, significantly reduced the scope of this claim, testifying that the *only* time he was aware that his work time was incorrectly reported occurred on May 24, 2020, when he was called to assist on a drug bust and ended up working six to eight hours of overtime that evening. (ECF Nos. 52 at 23; 50-1 at 1). Plaintiff further testified that he could not point to a week in which he worked over 40 hours but was not paid properly. (ECF No. 50-1 at 12–13). Accordingly, the court agrees with the Report that this particular SCPWA claim asserted by Plaintiff is pre-empted by the FLSA. (ECF No. 52 at 24–25). Furthermore, Plaintiff's objections do not point to evidence in the record, overlooked by the magistrate judge, that would create a question of fact regarding whether Plaintiff received comp time for the overtime he worked on May 24. The court, therefore, finds no basis for rejecting the magistrate judge's conclusions addressed in this objection, and the court overrules it.

    (6) **The magistrate judge's conclusion that Plaintiff's wage claims were "out of statute."**

This objection is difficult to decipher; the court will construe this objection as a challenge to the magistrate judge's determination that the two-year statute of limitations applies and bars recovery for alleged violations occurring prior to October 19, 2018. (ECF No. 52 at 23). Plaintiff's objection, however, fails to explain why the magistrate judge made an error in this determination. (ECF No. 59 at 24). This amounts to a general, non-specific objection to the conclusion set forth in the Report, and the court, having found no clear error in this portion of the Report, overrules this objection.

    (7) **The magistrate judge improperly discounted statements from Lt. Cummings and Chapman regarding pay disparity.**

Finally, Plaintiff argues that in concluding that Plaintiff failed to proffer any evidence reflecting that Plaintiff was paid less than he was due under the City's pay scale, the magistrate judge erroneously discounted "admissions" by Lisa Chapman ("Chapman"), City Clerk and

Human Resources Manager for the City of Easley, and Lieutenant Cummings ("Cummings") that his rate of pay was less than Plaintiff's grade and step required.  (ECF No. 59 at 25).  Plaintiff testified in his deposition that Cummings told him that his "pay was not matching with my status of my rank, and that I needed to go see the HR personnel" and that he was being paid as an Officer I instead of an Officer II.  (ECF No. 44-10 at 53–55).  Plaintiff also testified that after speaking to Cummings, he talked to Chapman who told him his pay "needed to be adjusted."  *Id*. at 54.[3]  The magistrate judge concluded that Plaintiff's deposition testimony about what Chapman and Cummings told him regarding his pay rate was inadmissible hearsay and that Plaintiff failed to assert that an exception applied to either of these statements.  (ECF No. 52 at 12 n.11).  The court agrees with the magistrate judge that these statements qualify as hearsay under Rule 801(c) of the Federal Rules of Evidence, and Plaintiff does not argue otherwise in his objections.  *See Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." (internal quotation marks omitted)).

Certain hearsay statements, however, are admissible for the truth if the declarant is unavailable as a witness.  Plaintiff now argues, apparently for the first time, that both statements constitute "admissions against interest" and "admissions by a party opponent" because Cummings and Chapman were agents of the City.  (ECF No. 59 at 25).  Plaintiff does not cite the evidentiary rules he relies upon or offer any other authority to support this objection.  The court has no duty to liberally construe the Plaintiff's objections as Plaintiff is not a *pro se* litigant; nonetheless, the court will briefly consider the Rules applicable to the hearsay exceptions referenced in Plaintiff's

---

[3] In her affidavit presented to the court in support of Defendants' motion for summary judgment, Chapman denied ever stating that Plaintiff's pay needed to be adjusted. (ECF No. 44-6 at 2–3).

objections. As for Plaintiff's argument that these statements qualify as "admissions against interest," counsel likely meant that Rule 804(b)(3) covers Chapman's and Cummings' statements. Rule 804(b)(3), which applies not to admissions but to *statements* against interest, "authorizes the admission of hearsay statements by an unavailable declarant that are manifestly against the declarant's interest." *Roe v. Howard*, 917 F.3d 229, 246 (4th Cir. 2019). "In assessing whether to admit evidence under Rule 804(b)(3), courts look to three factors: (1) whether the declarant is 'unavailable' to testify at trial; (2) whether the statement at issue was against the declarant's penal or pecuniary interest; and (3) whether corroborating circumstances exist that bolster the statement's trustworthiness." *Hampton v. City of Chicago*, No. 12-cv-5650, 2017 WL 2985743, at *13 (N.D. Ill. July 13, 2017) (internal question marks omitted). Plaintiff, as the proponent of the evidence, has the burden of establishing that all three factors have been satisfied. *See United States v. Mangum*, 539 F. Supp. 3d 515, 535 (E.D.N.C. 2020), *aff'd sub nom. United States v. Devine*, 40 F.4th 139 (4th Cir. 2022); *Hampton*, 2017 WL 2985743, at *13. Plaintiff has offered no evidence to establish that Chapman or Cummings are unavailable or that any of the other requirements of Rule 804(b)(3) are satisfied in this case.[4] Simply stating that this exception applies is insufficient; it is not the court's duty to comb the record and develop an argument for Plaintiff.

With respect to Plaintiff's argument that these statements qualify as "admissions by a party opponent," (ECF No. 59 at 25), Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).

---

[4] Although there is no proof before the court that Chapman and Cummings are unavailable within the meaning of Rule 804(b)(3), Defendants' reply to Plaintiff's objections refers to "the late Lt. Cummings." (ECF No. 60 at 5). Even if the court assumed Lt. Cummings is unavailable, Plaintiff has not attempted to establish the other requirements of the rule.

The agent "need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." *United States v. Brothers Constr. Co. of Ohio*, 219 F.3d 300, 311 (4th Cir. 2000); *Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619 (4th Cir. 1991) ("[A]uthority in the context of 801(d)(2)(C) means 'authority to speak' on a particular subject on behalf of someone else."). "[I]n the context of a Title VII employment discrimination case, FRE 801(d)(2)(D) requires the statement's *proponent to demonstrate* that the scope of the declarant's authority included matters related to the employment action at issue." *Parker v. Danzig*, 181 F. Supp. 2d 584, 592 (E.D. Va. 2001). Again, Plaintiff has not offered evidence or pointed to facts in the record to demonstrate that the purported statements by Cummings or Chapman related in any way to their respective areas of authority. The court, therefore, finds no error in the magistrate judge's conclusion that these statements constituted inadmissible hearsay that cannot be considered in connection with a summary judgment motion.

Furthermore, even if the court considered these statements and assumed Plaintiff was paid at a lower rate than required by his rank and grade, Plaintiff still fails to point to evidence that any such discrepancy existed because of Plaintiff's race. In particular, Plaintiff fails to explain why the magistrate judge's conclusion that John Aguilar is not a valid comparator for purposes of the disparate pay claim. (ECF No. 52 at 12). Accordingly, this objection is overruled as well.

## V. Conclusion

Having carefully reviewed the magistrate judge's thorough and detailed Report and carefully considered the arguments of the parties and Plaintiff's objections, the court agrees with and **ADOPTS** the magistrate judge's findings and recommendations in the Report (ECF No. 52), which are incorporated herein by reference. Accordingly, the court **GRANTS** Defendants' motion

for summary judgment. (ECF No. 44).  Defendants' motion to strike Plaintiff's sur-reply (ECF No. 63) is **GRANTED** as previously explained.

     **IT IS SO ORDERED**.

                               s/Timothy M. Cain
                               United States District Judge

March 27, 2023
Anderson, South Carolina